IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

```
UNITED STATES OF AMERICA,       )
                                )
              Plaintiff,        )     4:07 CR 3023
                                )
       v.                       )
                                )
                                )
IGNACIO MONTES-MEDINA,          )     REPORT AND RECOMMENDATION
                                )
              Defendant.        )
```

     Defendant has filed a motion to suppress evidence, alleging a number of violations of constitutional rights.  First, defendant alleges that the investigating officers violated his Fourth Amendment rights by entering his residence without a warrant, without probable cause, and in the absence of his consent or exigent circumstances.  In addition, defendant alleges that the affidavit used to support a later application for a search warrant omitted relevant information which, if it had been included, would have shown a lack of probable cause.  Essentially, the claimed omissions are (1) the residence had already been entered by police before the warrant application was made; (2) the extant circumstances, including that the owner of the residence was in custody, the house was under surveillance, and the fact that the defendants were in custody was not known by others; and (3) the times the confidential informant received the information recited in the affidavit, and from whom.  Filing 43.

Defendant does not claim any of the information in the affidavit was not accurate[1], but only that it was misleading because of the omitted information. Further, the defendant does not claim that the affidavit as presented was insufficient to show probable cause, but only that *if* the omitted information would have been included, it would not have established probable cause. The government has not responded to the motion.

When reviewing an application for search warrant, the reviewing court is to do so with deference to the issuing judge, employing a common-sense approach to determine whether, in the totality of the circumstances, the affidavit establishes a "fair probability" that evidence of a crime will be found at the location sought to be searched. Illinois v. Gates, 462 U.S. 213, 238 (1983). In doing so, I agree that as presented, the affidavit does establish probable cause to believe that the residence at 415 East Hall in Grand Island would likely contain drugs and/or evidence of drug trafficking.

In support of the motion, the defendant has filed the search warrant application, the warrant, and three police reports from the investigating officer. Filing 43, Exhibits 1-4. Defendant has not, however, cited to specific portions of the reports and how they made the warrant application misleading. Assuming the

---

[1] The brief in support of the motion says "The affidavit falsely alleges that Defendant provided incriminating information to the confidential informant." However, there is no statement in the affidavit attributed to this defendant. The only "incriminating" statement in the affidavit is attributed to "the two Hispanic males," one of whom is the defendant. Although it is true the statement is not individually attributed, there is nothing in the record filed by the defendant to the effect that the statement was not made. See further discussion, infra.

2

affidavit in support of the application is misleading, defendant has made no showing that such is the result of any intentional withholding of information, purposeful misstatement of information, or that it is the result of reckless disregard for the truth, at least one of which must be shown as a prerequisite to obtaining a hearing under Franks.  United States v. Williams, 477 F. 3d 554 (8th Cir. 2007).

> To be entitled to a hearing on this issue ("Franks hearing") a defendant must make a substantial preliminary showing that includes allegations of deliberate falsehood or of reckless disregard for the truth[.]  [T]hose allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.  The deliberate falsity or reckless disregard whose impeachment is permitted...is only that of the affiant, not of any non-governmental informant.  Franks v. Delaware, 438 U.S. 154, 171(1978).  While clear proof of these elements is not required at the stage at which the defendant is demonstrating an entitlement to an evidentiary hearing, United States v. Owens, 882 F.2d 1493, 1498 (10th Cir.1989), the defendant still must make a "substantial preliminary showing" comprised of specific allegations along with supporting affidavits or similarly reliable statements. Cf. Franks, 438 U.S. at 171 (describing the showing requirements for allegedly false statements in warrant affidavits).  Because "[t]here is...a presumption of validity with respect to the affidavit supporting the search warrant[,] [t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."  Id. The substantiality requirement is not lightly met.  United States v. Wajda, 810 F.2d 754, 759 (8th Cir. 1987).

477 F.3d at 557-558.  Defendant has not met these requirements and is not entitled to a Franks hearing.

It is true that the affidavit is not a model of clarity. It does not, for example, set forth times, and thus, it is not clear that the acts recited took place in one continuous sequence or that they even occurred on the same day. This is particularly troubling, as the affidavit describes both events that occurred presumably the day of the application, and also historical information, without specifying which is which. For example, in regard to the statement in the affidavit, "Your affiant further advises that with speaking with the CI, the two Hispanic males told him that all the rest of the methamphetamine was at the house that they had to go get it from." When did the "Hispanic males" tell the CI that information? Was it in reference to this purchase or a prior purchase? When did the CI tell the affiant? At what address was "the house?"

Likewise, the following statement in the affidavit is ambiguous:

> Your affiant advises that he has prior knowledge that the two Hispanic males have gone to 415 E. Hall, Grand Island, Nebraska to retrieve Methamphetamine.

Whence this "prior knowledge?" The learning of the "prior knowledge" could have been months before; if so, the statement does not support an inference that there was methamphetamine at the house at the time of the warrant application. In addition, was the "retrieval" in the midst of a controlled purchase? There is a later statement in the affidavit,

> Your affiant advises that based on two controlled purchases of Methamphetamine where the two Hispanic males went to 415 E. Hall, Grand Island, Hall County,

4

> Nebraska, before delivering the Methamphetamine, your affiant requests a search warrant of 415 E. Hall, Grand Island, Hall County, Nebraska....

There is no specific reference, however, indicating when the second (or, first) of these controlled purchases took place, nor anything describing the circumstances.

    Further, the following statements in the affidavit are also vague:

> On this date, your affiant advises he was advised by Investigator Jim Peterson of the Nebraska State Patrol, that he had seen the green Toyota Celica parked at the residence at 415 E. Hall, Grand Island, Hall County, Nebraska.  Inv. Peterson further advised that he saw both Hispanic males exit the residence and get back into the green Toyota."

Was the affiant advised on this date, or did Investigator Peterson see the Toyota parked at the residence on this date, and if the latter, was it before, after, or in the midst of the controlled purchase transaction described in the rest of the affidavit?  Did Inv. Peterson see the two Hispanic males arrive at the residence in the Toyota, and if so, at what time?  How could Inv. Peterson have seen the two Hispanic males "get back into" the Toyota if he didn't see them arrive in and exit it?

    The lack of time-of-day references seriously undermines the issuing judge's finding of probable cause, but not completely. In the introductory statements of the affidavit, the affiant states, "...on this date, December 27, 2006...," and it is inferable that all the subsequently described actions, except those that are "historical," took place on the day of the

application.  That would be a practical, common-sense interpretation of the affidavit, and it is undoubtedly the way the issuing judge interpreted it.

Importantly, though, if the time references would have been included, as they are set forth in the officer-affiant's police reports, it would have clarified and strengthened the presentation of probable cause, not weakened it.  The two reports (Filing 43, Exhibits 1 and 3), written the night the warrant was issued and after it was executed, do set forth times of day.  They establish the sequence of events, although not completely.

The report of the transaction (Exhibit 3) says Investigator Peterson was the officer who observed the two Hispanic males leave the residence at 415 East Hall and "get back into" the green Toyota, which Peterson then followed to a car wash, the site of the planned delivery to the CI.  The reports also state that Inv. Peterson was involved in the arrest of the defendant at a nearby residence *after* his companion had been arrested at the car wash.  It also says, after describing the arrests of both defendants, "Inv. Conrad *then* relocated to the residence...." (Filing 43, Exhibit 3, p. 3).  Hence, there was an apparent time gap between the time Inv. Peterson left the residence and the time Inv. Conrad arrived there, during which there is no indication that the house was under surveillance.  During this time, of course, "anything could [have] happen[ed]."  Defendant has not made any showing or argument, however, that had the residence been watched during this time, the officers would have observed anything that would have undermined the judge's finding of probable cause.

If the warrant application had stated that the house had been "secured," that is, entered and swept before the application for the warrant, that would not have weakened the finding of probable cause.  Drugs can be hidden anywhere; if a police officer, in conducting a protective sweep for persons who may threaten officer safety or destroy evidence, does not see drugs in "plain view," it does not mean there are no drugs in the building.  I seen no harm in the affidavit omitting reference to the prior entry of the house, and in fact, under the circumstances, it was prudent to do so.

Defendant also argues that the affidavit omitted the facts that the owner of the residence was in custody, the house was under surveillance, and that the defendants' arrests were not known by others.  There is nothing in the record, however, to support these arguments.  First, a later report, Filing 43, Exhibit 4, states that the "owner" of the property was not one of the defendants, but rather a Todd Friesen, who had rented it to defendant Montes-Medina.  Second, as shown above, the only evidence before the court is that the house was not constantly under surveillance.  Third, there is no showing that the defendants or others did not communicate the fact of the defendants' arrests to any other person.

Finally, although it is true that the affidavit does not state which of the "two Hispanic males" gave certain information to the CI, I do not find this omission crucial. Again, it is inferable that the source was one of the "two Hispanic males" who had been identified as defendants Montes-Medina and Vega-Toscano. Had the statements been attributed to one as opposed to the

7

other, that would not have weakened the affidavit's recitation of their concerted action in the controlled purchase.

I thus conclude that the warrant application was sufficient to establish probable cause. The evidence obtained from the search pursuant to the warrant should not be suppressed. Accordingly, there is no need to decide if the officers' earlier, warrantless entry into the residence violated the defendant's Fourth Amendment rights, as no information about or evidence from that entry was presented in the warrant application. The warrant application stands on its own, and as such, adequately supports the issuing judge's finding of probable cause.[2]

IT THEREFORE HEREBY IS RECOMMENDED to the Hon. Warren K. Urbom, United States Senior District Judge, pursuant to 28 U.S.C. §636(b)(1)(B) that the defendant's motion be denied.

The parties are notified that failure to object to this recommendation as provided in the local rules may result in a waiver of the right to appeal the district judge's adoption of findings in the recommendation.

Dated April 5, 2007

                                        BY THE COURT

---

[2] The defendant has not identified any independent evidence--that is, derived from the warrantless entry but not presented in the application--that the government has indicated it intends to use against him.

/s/ David L. Piester
United States Magistrate Judge